Santos R. HERNANDEZ,
Plaintiff–Appellee,
Cross–Appellant,

v.

HILL COUNTRY TELEPHONE COOPERATIVE, INC. and Anthony Thorne, Defendants–Appellants, Cross–Appellees.

Santos R. HERNANDEZ,
Plaintiff–Appellee,

v.

HILL COUNTRY TELEPHONE COOPERATIVE, INC. and Anthony Thorne, Defendants–Appellants.

Nos. 87–5507, 87–5564 and 87–5581.

United States Court of Appeals,
Fifth Circuit.

June 17, 1988.
Rehearing and Rehearing En Banc
Denied July 19, 1988.

**140**

Lavern D. Harris, Susan F. Harris, Harris, Monroe & Williams, P.C., Kerrville, Tex., Allen P. Schoolfield, Jr., Dallas, Tex., for defendants-appellants.

Glen D. Mangum, Manuel Escobar, Jr., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN and POLITZ, Circuit Judges, and DUHE, District Judge.[*]

POLITZ, Circuit Judge:

In these consolidated appeals Hill Country Telephone Cooperative, Inc. and its president, Anthony Thorne, challenge the findings of the district court that they discriminated against Santos R. Hernandez on the basis of his race and national origin. Hernandez filed suit pursuant to 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Hill Country and Thorne (hereinafter, unless noted, collectively referred to as Hill Country) also assign error to the court's ruling on the issue of limitations and to the award of attorney's fees. Hernandez appeals, contending that the court erred in exonerating Hill Country from liability for other discriminatory acts and for declining to grant him a trial by jury. Finding that the evidence supports the court's factual findings and that its rulings reflect neither error of law nor abuse of discretion, we affirm.

### Background

On October 8, 1981 Hernandez, a Mexican–American, applied to Hill Country for a position in "construction or whatever he qualified for." During the employment interview, Hill Country learned of Hernandez's substantial training and experience in electronics. Although it had available two higher paying jobs in the installation-repair department, for which Hernandez was qualified, Hill Country told Hernandez that the only job available was Construction–Journeyman II at an hourly rate of $4.26. Hernandez accepted that job. Hill Country promptly filled the two other positions with Anglo–Caucasians.

Hernandez completed his 90–day probationary period and received a modest pay increase. A few months later he applied for an open position in installation-repair for which he was qualified by his prior training and experience. Instead of assigning the job to Hernandez, Hill Country rewrote the job description, juggled jobs,

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

and gave the position to an Anglo–Caucasian employee less qualified and with less seniority than Hernandez. Hernandez complained to management and was promised the next available position compatible with his electronics training. He was subsequently promoted to Installer-Repairman II, with identical duties as an Installer-Repairman I, but at a substantially lower rate of pay.

On November 2, 1982 Hernandez filed a charge with the Equal Employment Opportunity Commission, claiming that Hill Country had failed to promote him because of his national origin, and had denied him equal wages, benefits, and employment opportunities. Hernandez amended this charge on July 13, 1983, to add a claim of racial discrimination. During the pendency of this charge Hernandez unsuccessfully sought other available positions. Hill Country ultimately changed his job classification to Installer-Repairman I when it abolished the Installer-Repairman II classification.

When Hernandez requested its issuance, a notice of right-to-sue was posted. The EEOC sent the notice by certified mail to Hernandez, mailing copies to his attorney and to the attorney for Hill Country. Hernandez received the notice on December 7, 1983; his attorney received his copy on November 25, 1983. Suit was filed on February 27, 1984, invoking both Title VII and 42 U.S.C. § 1981, seeking compensatory and punitive damages, and equitable relief. The complaint went beyond the charges in the EEOC complaint, adding an allegation of discrimination for denial of a promotion in 1983 and for retaliation for filing the EEOC charge.

Hill Country moved for summary judgment or dismissal, contending that: (1) the suit was untimely because it was filed more than 90 days after receipt of notice by Hernandez's attorney; (2) Thorne had not been named individually in the EEOC complaint; and (3) the Texas two-year statute of limitations applied to the § 1981 claim; therefore, incidents occurring before February 27, 1982 were barred. The district court granted the motion in part, ruling that claims against Thorne were limited to § 1981, and that any § 1981 claim arising before February 27, 1982 was barred by limitations. The court rejected that part of the motion claiming that Hernandez had filed the Title VII claim untimely.

Following a bench trial the court found that Hill Country and Thorne had discriminated against Hernandez by: (1) failing to hire him for an available position for which he was qualified; (2) failing to provide the same on-the-job training received by similarly situated Anglo-Caucasians; and (3) failing to grant him pay raises at six-month intervals as was done for all other employees. The court awarded judgment on the Title VII claim against Hill Country, and on the § 1981 claim against Hill Country and Thorne. In addition to injunctive relief, the court awarded Hernandez damages totaling $13,100.80, attorney's fees of $41,816.80 for costs.

Both parties appeal. Hill Country contends that the Title VII complaint was not filed timely; that its liability for discrimination should not extend to acts occurring more than 180 days before the charge was filed with the EEOC; that it was improper to consider the complaint under both Title VII and § 1981; that the evidence does not support the judgment; and, finally, that the award of attorney's fees was inappropriate and disproportionate to the relief secured and in excess of Hernandez's contract with his attorney. Hernandez appeals, contending that the court erred in exonerating the defendants from other discriminatory acts and for denying him a trial by jury.

### Analysis

1. Timeliness of Title VII Judicial Complaint.

▮ Hill Country contends that the 90–day period for filing suit, 42 U.S.C. § 2000e–5(f), began to run when counsel for Hernandez received the right-to-sue letter. Hill Country errs. We have held repeatedly that when the right-to-sue letter is addressed to the claimant, the 90–day period begins to accrue when the claimant receives the notice. *Bunch v. Bullard*, 795

F.2d 384 (5th Cir.1986); *Espinoza v. Missouri Pacific R. Co.*, 754 F.2d 1247 (5th Cir.1985). Hernandez received the notice at his address on December 7, 1983. The suit, filed on February 27, 1984, was timely.

**2. Timeliness of EEOC Charge.**

■ Under 42 U.S.C. § 2000e–5(e) a charge must be filed with the EEOC within 180 days after the alleged discriminatory act. Hill Country argues that the trial court erred in finding it liable for discrimination based on acts which occurred more than 180 days prior to November 2, 1982, the date Hernandez filed his initial EEOC charge. This issue was not raised in the trial court and is first presented on appeal. We must deem it waived.

In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held

> that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. The structure of Title VII, the congressional policy underlying it, and the reasoning of our cases all lead to this conclusion.

455 U.S. at 393, 102 S.Ct. at 1132, 71 L.Ed. 2d at 243 (footnote omitted). Citing *Oaxaca v. Rosco*, 641 F.2d 386 (5th Cir.1981), Hill Country contends that its motion for summary judgment or dismissal sufficed as an invocation of the 180–day provision. Hill Country suggests that *Oaxaca* stands for the proposition that a motion to dismiss for failure to state a claim upon which relief can be granted implicitly raises all limitations which might be advanced in defense of the claim. We are not persuaded. *Oaxaca* does not so hold. We also note that the argument is contrary to both the letter and spirit of Fed.R.Civ.P. 46, which requires that "a party, at the time the ruling or order of the court is made or sought, makes known to the court the ... party's objection to the action of the court and the grounds therefor...." The failure of Hill Country to raise the 180–day limita-

tion, in any written motion, or even orally, constitutes the waiver referred to in *Zipes. See also, Moore v. Tangipahoa Parish Sch. Bd.*, 594 F.2d 489 (5th Cir.1979) (laches and limitations are affirmative defenses which must be specially pled under Fed.R. Civ.P. 8(c)); *Pearce v. Wichita County*, 590 F.2d 128 (5th Cir.1979).

**3. Title VII and § 1981.**

Relying upon our decision in *Parker v. Mississippi St. Dept. of Pub. Welfare*, 811 F.2d 925 (5th Cir.1987), Hill Country maintains that the district court erred in considering Hernandez's claims under both Title VII and § 1981. In *Parker* we stated:

> Parker also alleged that MDPW's discriminatory promotion decision violated § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and § 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. In this Circuit, specific consideration of these alternate remedies for employment discrimination is necessary only if their violation can be made out on grounds different from those available under Title VII. *See Watson v. Ft. Worth Bank & Trust*, 798 F.2d 791, 794 n. 4 (5th Cir. 1986); *Rivera v. City of Wichita Falls*, 665 F.2d 531, 534 n. 4 (5th Cir.1982); *Whiting v. Jackson State University*, 616 F.2d 116 (5th Cir.1980). Because Parker has not asserted any such distinction here, we give specific consideration only to her Title VII claim.

811 F.2d at 927 n. 3. Hill Country reads this footnote as limiting litigants to relief only under Title VII. Such a reading, although plausible, is in direct conflict with holdings of the Supreme Court and this court.

In *Parker* we did no more than limit our appellate review of the denial of Title VII relief to the facts alleged in support of that claim, doing so because the claims alleged under Title VII and § 1981 were provable by the same facts. Thus a finding of liability or non-liability under one statute satisfied the other. *Whiting v. Jackson State University*, 616 F.2d 116 (5th Cir.1980). *Parker* does not stand for the proposition, nor could it properly do so, that a claimant alleging racial discrimination in an employ-

ment setting is limited to recovery under Title VII.

■ In *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court taught that the remedies available under Title VII are coextensive with those of § 1981 and " 'that the two procedures augment each other and are not mutually exclusive.' " *Id.* 421 U.S. at 459, 95 S.Ct. at 1719, 44 L.Ed.2d at 301 (citations omitted). Moreover, the Supreme Court considered as well-settled that "[a]n individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages.... And a backpay award under § 1981 is not restricted to the two years specified for backpay recovery under Title VII." *Id.* (citations omitted). We have followed *Johnson* in numerous cases. *See Thomas v. City of New Orleans,* 687 F.2d 80 (5th Cir.1982) (affirming a jury award of punitive damages under § 1981 in a case of discriminatory discharge); *Claiborne v. Illinois Central Railroad,* 583 F.2d 143 (5th Cir.1978), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979) (affirming award of punitive damages in suit brought under both Title VII and § 1981); *Garner v. Giarrusso,* 571 F.2d 1330 (5th Cir.1978) (compensatory damages appropriate in some suits brought under both Title VII and § 1981 for racial discrimination in private employment); *Faraca v. Clements,* 506 F.2d 956 (5th Cir.), *cert. denied,* 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975) (affirming an award of compensatory damages in an employment discrimination suit brought under § 1981). The district court properly considered Hernandez's claims under both § 1981 and Title VII.

### 4. Sufficiency of the Evidence.

■ Hill Country next maintains that the essential factual findings by the district court on discrimination and damages are not supported by the evidence. Those factual findings are protected by the sturdy redoubt of Fed.R.Civ.P. 52(a), which directs our acceptance of factual findings unless clearly erroneous. The reviewing court reaches that level of error only when it comes to a definite and firm conviction that an error has been made. After our review of this record, we have no such conviction.

Hernandez had the burden of proving that he was discriminated against because of his race or national origin. He was obliged to prove that he belonged to a protected group, that he applied for and was qualified for an available job, that he was rejected, and that the position remained open or the job was filled by someone outside the protected group. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). He did so. It then became incumbent upon Hill Country to assign a legitimate business reason for its action, one which could be tested for pretext. *Bunch v. Bullard,* 795 F.2d 384 (5th Cir.1986).

The trial court found that Hernandez had proven that Hill Country discriminated against him because he is a Mexican–American, when he proved that he was available and qualified for the Installer–Repairman positions which were filled by less qualified Anglo–Caucasians. The court further found that Hill Country had failed to articulate a non-discriminatory reason for its action. Those findings are amply supported by the evidence. So are the findings that Hill Country did not favor Hernandez with the same on-the-job training as it gave the other employees, all of whom also received pay raises on a semi-annual basis. Only Hernandez was limited to annual raises.

Hernandez, in his appeal, urges error in the trial court's findings of no discrimination in other instances involving promotions and alleged retaliation. Once again, the factual findings are protected by Fed.R. Civ.P. 52(a) and are not clearly erroneous.

■ As to damages, Hill Country contends that the record does not support an award of $5,000 in compensatory damages for mental anguish. The record contains evidence of the medical treatment Hernandez received, and of the emotional problems stemming from his employment difficulties. The district court was free to cred-

it this evidence and base an award of damages thereon. We perceive no reversible error.

5. Attorney's Fees.

Hill Country challenges the award of attorney's fees on three grounds: (1) Hernandez did not obtain substantial relief; (2) the award is disproportionate to the monetary recovery by Hernandez; and (3) the fees exceed the contingency agreement between Hernandez and his counsel.

■ Hill Country argues that *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), required the district court to reduce the attorney-fee award for the time spent in pursuit of unsuccessful claims. Hill Country insists that the unsuccessful claims were unrelated to those claims which resulted in the judgment of liability and, thus, "should be treated as if they had been raised in separate lawsuits." *Id.* 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51. This argument overlooks the *Hensley* court's characterization of related claims.

The *Hensley* court teaches that claims for relief that involve a common core of facts, or derive from related legal theories, cannot be viewed as a series of discrete claims. In a case such as this, the Court explained that "[i]f a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. The district court determined that Hernandez's claims represented related claims and that Hernandez obtained substantial relief. We find neither error nor abuse of discretion in the court's award of a fully compensatory fee. *Abrams v. Baylor College of Medicine*, 805 F.2d 528 (5th Cir.1986).

■ Hill Country next contends that the award of attorney's fees was disproportionate to Hernandez's recovery. There is no *per se* requirement of proportionality in an award of attorney fees under 42 U.S.C. § 1988. *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Albeit not dispositive, proportionality is an appropriate consideration in the typical case. In *Rivera*, the Supreme Court approved attorney's fees markedly exceeding the damage award. Although exceeding the monetary recovery, the fees awarded herein are substantially less disproportionate than those approved in *Rivera*. We are not prepared to say that the district court erred or abused its discretion in making this award.

■ Finally, Hill Country argues that our decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), prevents an attorney from recovering more than his client is contractually obligated to pay. *Id.* at 718. We agree with Hill Country's statement of the rule as set out in *Johnson*, but that rule provides Hill Country with no surcease. The factual situation at bar markedly differs.

The court scheduled a hearing to determine the attorney's fee. Hernandez's attorney explained their fee arrangement, which was entirely contingent: if Hernandez's suit was not successful no fee was due; if the suit was successful but no attorney's fees were awarded, counsel would receive 50% of the sums recovered by Hernandez; if the court set attorney's fees in an amount less than 50% of Hernandez's recovery, Hernandez would add the difference to the fee; if the fees as set by the court equaled or exceeded 50% of Hernandez's recovery, Hernandez would pocket his full recovery and the attorney would take the fees as set by the court.

Although a variance of the usual contingent fee contract, with a contingent percentage higher than we would prefer, we do not find this contractual arrangement, in a case requiring a substantial investment of the attorney's time and funds for proper trial preparation and trial, to be proscribed by either *Johnson* or other of this court's precedents, or otherwise unreasonable. We have noted that a fairly-negotiated fee contract typically represents what the plaintiff and his counsel deem to be a reasonable fee. *Blanchard v. Bergeron*, 831 F.2d 563 (5th Cir.1987), *cert. granted*, 56 L.W. 3873 (June 28, 1988).

6. Jury Trial.

■ The final issue relates to jury trial. Hernandez did not request a jury trial with-

in the time prescribed by Fed.R.Civ.P. 38, "not later than 10 days after the service of the last pleading directed to [the issue for which jury trial is requested]." Counsel sought leave for jury trial under Rule 39, which entrusts the matter to the trial court's discretion.

The trial court twice denied Hernandez's Rule 39 motion for a jury trial, first made over seven months after he filed his last pleading, which was in fact his first pleading, the original complaint. Hernandez has suggested no adequate basis for our rejection of the exercise of that discretion, and we glean none from the record.

The judgment of the district court is, in all respects, AFFIRMED.